UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   DAVID ROBERT CHAVEZ, Jr. and
ERNESTINA SANDOVAL CHAVEZ,

Debtors.                                                    Case No.: 18-12710-j7

GORENCE & OLIVEROS, P.C., TMP
LEGAL, LLC, ADAM GRIEGO, and ELIJAH
HAUKEREID,

Plaintiffs                                         Adv. Proceeding No.: 19-01003-j

v.

DAVID ROBERT CHAVEZ, Jr.

Defendant.

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment ("Summary Judgment Motion"). *See* Docket No. 9. Defendant/Debtor David Robert Chavez, Jr., filed a response to the Summary Judgment Motion ("Response"), and Plaintiffs replied ("Reply"). *See* Docket Nos. 15, 16.

Defendant, together with his spouse, filed a voluntary petition for relief under Chapter 7 in October 2018. *See* Bankruptcy Case No. 18-12710-j7. In January 2019, Plaintiffs filed an adversary proceeding seeking a determination that a civil judgment against Defendant entered in federal district court is non-dischargeable. Docket No. 1. In the Summary Judgment Motion, Plaintiffs argue that the judgment is non-dischargeable as a matter of law under 11 U.S.C. § 523(a)(6) because the facts not in genuine dispute establish that Adam Griego and Elijah

Haukereid were injured by Defendant's willful and malicious conduct. Docket No. 9. Defendant argues that genuine disputes of material fact preclude summary judgment. Docket No. 15. After consideration of the arguments and evidence presented by the parties, the Court grants in part and denies in part Plaintiffs' Summary Judgment Motion for the reasons set forth below.

## I.      Summary Judgment Standards

Summary judgment will be granted when the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Furthermore, New Mexico Local Bankruptcy Rule 7056–1(c) provides that the party opposing summary judgment must: 1) list the material facts as to which the party contends a genuine fact exists; 2) "refer with particularity to those portions of the record upon which the opposing party relies;" and 3) "state the number of the movant's fact that is disputed." NM LBR 7056–1(c).

Properly supported material facts set forth in the movant's motion are "deemed admitted unless specifically controverted" by the party opposing summary judgment. NM LBR 7056–1(c).

## II. Facts Not Subject to Genuine Dispute[1]

After review of the statements in the Plea Agreement,[2] the affidavits and testimony presented by Plaintiffs, and Defendant's affidavit and attachments thereto, as well as the Summary Judgment Motion, Response, and Reply, the Court finds that the following facts are not in genuine dispute.[3]

### A. The Encounter with Griego

1. On May 24, 2016, there were eight people camping at the Juan Tomas campsite in the mountains east of Albuquerque. Docket No. 9-1, Jaramillo Aff., ¶ 8; Summary Judgment Motion SUF ¶ 1; Response, pg. 2.

2. Defendant, a United States Forest Service ("USFS") Officer, was dispatched to the campsite based on reports that a group of people had started a fire in an area closed due to fire danger. Defendant's Affidavit ("Def's Aff."), ¶ 4; Reply, pg. 4. Another USFS officer, David Olsen ("Olsen"), was also dispatched to the Juan Tomas campsite. *Id*.

---

[1] Under Fed. R. Civ. P. 56(g), made applicable to this adversary proceeding by Fed. R. Bankr. P 7056, if the court does not grant all the relief requested by a motion for summary judgment, the court may deem any facts not in genuine dispute as established in the case. Whether to grant a request to deem facts as established under Rule 56(g) falls within the court's sound discretion. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2737 (4th ed.). Here, Plaintiffs did not request in the Summary Judgment Motion that the Court deem facts as established pursuant to Rule 56(g). Therefore, the facts not in genuine dispute, as set forth in this opinion, are established only for purposes of the Summary Judgment Motion.

[2] For the reasons set forth in Section III.A.1, *infra*, the Court deems the facts stated in the Plea Agreement not in genuine dispute, notwithstanding Defendant's affidavit setting forth arguably contradictory facts.

[3] To the extent Defendant challenges Plaintiffs' asserted facts related to Griego's physical and mental injuries on the ground that they are not supported by admissible evidence, the Court need not address this argument because those facts are unnecessary to the Court's resolution of the Summary Judgment Motion. Response, pg. 2.

3. When he arrived, Defendant approached Griego. Docket No. 9-3, Griego Testimony, 68:4-10; Summary Judgment Motion Statement of Undisputed Facts ("SUF") ¶ 2; Def's Aff. ¶ 8. Defendant instructed Griego to turn around and place his hands behind his back, and Griego complied with those instructions. Docket No. 9-4, Plea Agreement, p. 3; Docket No. 9-3, Griego Testimony, 68:9-10. Summary Judgment Motion SUF ¶ 5; Def's Aff. ¶¶ 8, 12.

4. At no time during the encounter did Griego pose a threat to Defendant; Griego was compliant with Defendant's instructions throughout the encounter. Docket No. 9-4, Plea Agreement, p. 3.

5. After placing Griego in handcuffs without incident, Defendant slammed Griego's face onto the hood of his USFS vehicle two times. Defendant used unreasonable force in detaining Griego. Docket No. 9-4, Plea Agreement, p. 3.

6. While he slammed Griego onto the hood, Defendant knew it was wrong, but he acted anyway, and he did so in his capacity as a law enforcement officer. Docket No. 9-4, Plea Agreement, p. 3.

7. Defendant detained Griego in the back seat of his police vehicle in handcuffs for approximately two to three hours. Docket No. 9-3, Griego Testimony, 81:12-17; Ex. 14 ¶ 15. Summary Judgment Motion SUF ¶ 9; Def's Aff. ¶ 12; Response, pg. 2. During that time, Defendant's trained police dog was in the vehicle as well. Docket No. 9-3, Griego Testimony, 78:6-79:9. Summary Judgment Motion SUF ¶ 9; Def's Aff. ¶¶ 22-23.

**B. The Encounter with Haukereid**

8. After placing Griego in handcuffs, Defendant saw that Haukereid was recording him on a cell phone. Docket No. 9-Ex. 6, Haukereid Cell Phone Video; Summary Judgment Motion SUF ¶ 15; Def's Aff. ¶ 10.

9. Defendant approached Haukereid and requested Haukereid's identification. Docket No. 9-Ex. 6, Haukereid Cell Phone Video; Summary Judgment Motion SUF ¶ 16; Def's Aff. ¶ 14.

10. When Haukereid did not immediately comply, Defendant deployed the police dog and ordered Haukereid to get on the ground. Summary Judgment Motion SUF ¶ 17; Def's Aff. ¶ 14.

11. Defendant handcuffed Haukereid. Officer Olsen then detained Haukereid in Officer Olsen's vehicle for approximately two hours. Summary Judgment Motion SUF ¶ 20; Def's Aff. ¶ 15.

12. Haukereid testified that it was "super uncomfortable" in the vehicle and that he "was losing feeling in [his] shoulders and [his] arms." Docket No. 9-3, Haukereid Testimony, 26:3-8; Summary Judgment Motion SUF ¶ 38; Response, pg 2.

13. As a result of the incident, Haukereid has a fear of dogs that prevents him from being around dogs. Summary Judgment Motion SUF ¶ 39; Response, pg. 2; Docket 9-3, 40:5-16.

**C. Civil and Criminal Proceedings Arising from the Encounters with Griego and Haukereid**

14. In December 2016, Defendant was charged with violation of 18 U.S.C. § 242 (2018), which prohibits "willfully subject[ing] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" while acting under "color of any law, statute, ordinance, regulation, or custom." *See* Docket Nos. 9-4, 9-11; *United States v. Chavez*, 15-cr-4362 LF (D.N.M.).

15. Defendant entered into a plea agreement (the "Plea Agreement") in which he admitted to willfully violating 18 U.S.C. § 242. *See* Summary Judgment Motion SUF ¶¶ 40-42; Response; Docket No. 9-4.

16. In the Plea Agreement, Defendant stated as follows:

On May 26, 2014, I was working in my capacity as a law enforcement officer with the United States Forest Service. While on duty that day, I learned via radio dispatch that trespassers had driven onto land administered by the USFS that was marked as prohibiting motor vehicles. I approached the area in my USFS vehicle and was advised by USFS firefighters that two young men in a silver pick-up truck had driven on the land despite posted signs as well as instructions from the firefighters that vehicles were not permitted in the area. I drove my USFS vehicle in the direction that the trespassers had driven and approached a group of people near three vehicles, one of which was a silver pick-up truck. After exiting my vehicle, one of the young males in the group, later identified as [Griego], approached my vehicle, and I asked if he had just driven the silver pick-up truck to the campsite. [Griego] responded that he had driven the silver pick-up. I instructed [Griego] to turn around and place his hands behind his back, and he complied with these instructions. After placing [Griego] in handcuffs without incident, I slammed [Griego]'s face onto the hood of my USFS vehicle two times. While I slammed [Griego] onto the hood, I knew it was wrong but I acted anyway, and I did so in my capacity as a law enforcement officer. [Griego] was handcuffed and compliant, and he did not pose a threat at any time. By slamming [Griego]'s head onto the hood of my vehicle in this manner, I willfully deprived him of his right under the United States Constitution to be free from unreasonable search and seizure-specifically, the right to be free from the use of unreasonable force by a law enforcement officer. Docket No. 9-4.[4]

17. Defendant also "specifically admit[ted] the . . . facts [in the Plea Agreement] and declare[d] under penalty of perjury that all of th[o]ese facts are true and correct[.]" Docket No. 9-4, pg. 3.

18. Defendant was sentenced to one year of probation with three months of home detention with location monitoring, and 200 hours of community service. Docket No. 1-1.

19. In May 2016, Plaintiffs filed a complaint in federal district court (the "District Court Action") alleging that Defendant had violated their civil rights by using excessive force against them pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971)*. See Griego, et al. v. Chavez*, Case No. 16-cv-475

---

[4] The Plea Agreement does not refer to Haukereid. Docket Nos. 9-11, 9-4.

JCH/SCY (D.N.M. Feb. 21, 2018); Docket No. 1-1; Summary Judgment Motion SUF 43; Response, pg. 2.[5]

20. Defendant did not answer the complaint or enter an appearance in the District Court Action, and the federal district court entered a default judgment as to liability. Docket Nos. 15-1, 1-1; Response, pg. 2.

21. The federal district court then held a bench trial on damages. Docket No. 1-1; Summary Judgment Motion SUF 44-53; Response, pg. 2. Defendant did not appear at the trial and the federal district court entered findings of fact and conclusions of law in February 2018. Docket No. 1-1; Summary Judgment Motion SUF 44-52; Response, pg. 2.

22. The federal district court awarded compensatory and punitive damages to Griego in the amount of $450,000, and to Haukereid in the amount of $140,000, for a total sum of $590,000. Docket No. 1-2; Summary Judgment Motion SUF 53-54; Response, pg. 2. It also awarded attorneys' fees and costs of $73,803.76 to Griego and Haukereid collectively.[6] Docket No. 1-3; Docket No. 1-4; Summary Judgment Motion SUF ¶¶ 55-56; Response, pg. 2.

## III. Discussion

Plaintiffs' Summary Judgment Motion presents three preliminary issues that the Court addresses first: (1) whether the law firms of Gorence and Oliveros, P.C. and LMP Legal, LLC (the "Law Firms") are proper plaintiffs in this nondischargeability action; (2) the effect of the facts admitted in Defendant's Plea Agreement; and (3) whether the federal district court's findings of

---

[5] Although Defendant stated in the Response that the facts related to the District Court Action are disputed, he did not adduce any evidence demonstrating a dispute and, therefore, failed to create a genuine question of fact as to the facts related to the District Court Action and the judgments resulting therefrom. Response, pg. 2.

[6] The Court will refer to the federal district court's judgments awarding damages, attorneys' fees, and costs collectively as "the Griego/Haukereid Judgment."

fact conclusively establish both Defendant's actions and his state of mind during the encounter with Griego and Haukereid, as Plaintiffs assert. Docket No. 9. After resolution of these issues, the Court turns to whether Plaintiffs are entitled to summary judgment as a matter of law as to non-dischargeability of the Griego/Haukereid Judgment.

### A. Preliminary Issues

### 1. The Court will Dismiss the Claims of the Law Firms

The Court will dismiss the claims of the Law Firms. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "a court may dismiss sua sponte 'when it is patently obvious that the plaintiff could not prevail on the facts alleged . . . .'") (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir.1991)). The Law Firms represented Plaintiffs Griego and Haukereid in the District Court Action. Docket No. 1-2. Section 523(c)(1) provides that the bankruptcy court may deem a debt nondischargeable under § 523(a)(6) "*on request of the creditor to whom such debt is owed*, . . . ." (Emphasis added.) Similarly, Federal Rule of Bankruptcy Procedure 4007 provides that "[a] debtor or any *creditor* may file a complaint to obtain a determination of the dischargeability of any debt." *Cf.* 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of [§ 727]"). A "creditor" is "an entity that has a claim against the debtor." 11 U.S.C. § 101(10)(A). "The term 'debt' means liability on a claim," 11 U.S.C. § 101(12), and a "claim" is a "right to payment." 11 U.S.C. § 101(5)(A).

The Law Firms do not fall within the definition of "creditor" because nothing in the Griego/Haukereid Judgment indicates that they have a right to payment *from Defendant. Solomon v. Jarrett* (*In re Jarrett*), 303 B.R. 816, 821 (Bankr. E.D. Ark. 2003) ("Only a creditor of the debtor has standing to pursue a nondischargeable debt arising out of a willful and malicious injury."). The attorney fees and costs awards were requested by and awarded to the District Court Action

plaintiffs: Griego and Haukereid, not to the Law Firms. Docket No. 1-3. Even if a charging lien

attached at the commencement of the District Court Action, "an attorney's lien against either his

client's cause of action or judgment is not the functional equivalent of an indebtedness owing to

the attorney by the client's obligor." *Hill*, 26 B.R. at 54. The fees and costs awards thus do not

represent debts owed by Defendant to the Law Firms. Hence, to the extent the Law Firms seek a

non-dischargeability determination on their own behalf, the claims of the Law Firms must be

dismissed. *Jarrett*, 303 B.R. at 822-23 (granting the defendant's motion to dismiss where the

plaintiff-attorneys were not creditors of the defendant and therefore "not eligible to bring [a non-

dischargeability] action"); *Hill*, 26 B.R. at 55 (granting summary judgment to the defendant on the

ground that the plaintiffs-attorneys were not creditors).

### 2. Defendant is Bound by his Admissions in the Plea Agreement

Although Defendant does not dispute that he entered into the Plea Agreement,[7] he attached

an affidavit in which he describes his encounter with Griego differently than in the Plea

Agreement. Docket No. 15-1. In relevant part, Defendant admitted in the Plea Agreement that:

1. Griego complied with Defendant's instructions to turn around and place his
   hands behind his back;

2. After Defendant placed Griego in handcuffs without incident, Defendant
   slammed Griego's face onto the hood of his USFS vehicle two times;

---

[7] Nor does Defendant challenge the admissibility of the Plea Agreement. *See Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("[W]e can consider only admissible evidence in reviewing an order granting summary judgment.") (quoting *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1541 (10th Cir.1995)); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). In addition, in the Plea Agreement, Defendant agreed that it "shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding." Docket No. 9-4, pg. 6. *See United States v. Jim*, 786 F.3d 802, 806 (10th Cir. 2015) (affirming the admission of statements made in a plea agreement where the defendant agreed to the same waiver language as Defendant and adduced no evidence that the plea was involuntary or otherwise invalid).

3. When Defendant slammed Griego's face onto the hood of the USFS vehicle,
   Griego was handcuffed and compliant and did not pose a threat at that or any
   other time;

4. When Defendant slammed Griego's face into the hood of the USFS vehicle, Defendant
   knew it was wrong but did it anyway; and

5. By slamming Griego's head onto the hood of the vehicle in that manner,
   Defendant willfully deprived Griego of his right to be free from the use of
   unreasonable force by a law enforcement officer.

Docket No. 9-4. Defendant describes the encounter differently in his affidavit. He states,

6. I placed . . . Griego in handcuffs. I instructed the remaining campers to move to
   a nearby clearing and produce identification.

7. I patted . . . Griego down while Officer Olsen watched the other campers.

   . . . .

8. I was holding . . . Griego's handcuffs during these interactions he began to turn
   his hands and stiffen his body. I leaned him into my vehicle, which placed his
   chest into the front of my vehicle, and spread his legs further apart. I told him
   to "cut his shit out." He complied, and I finished the patdown and placed him
   in my vehicle. I had him lean into my vehicle and spread his legs while I opened
   the door.

9. I did not use any expletives during the encounter other than the comment
   described in the previous paragraph.

Def's Aff., ¶¶ 8-13.

"[A] party opposing a properly supported motion for summary judgment . . . must set forth

specific facts showing that there is a genuine issue for trial through affidavits or other supporting

evidence." *Anderson*, 477 U.S. at 256. Defendant's affidavit fails to create a genuine for trial for

two reasons. First, to the extent the affidavit does not specifically controvert the admissions in the

Plea Agreement, the affidavit does not create a genuine dispute of material fact as to those

admissions. *See* NM LBR 7056–1(c) (providing that properly supported material facts set forth in

the movant's motion are "deemed admitted unless specifically controverted" by the party opposing

summary judgment).

Second, to the extent Defendant's description of the events in the affidavit contradicts the facts stated in the Plea Agreement, the Court finds that the affidavit is an attempt to create a sham fact issue.[8] When an affidavit submitted in opposition to summary judgment is found to be an attempt to create a sham fact issue, courts may disregard the affidavit. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). This rule recognizes that "the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." *Id*.

The sham affidavit rule has most often been applied when an affidavit contradicts prior sworn testimony, such as a deposition. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001); *New Falls Corp. v. Tullo*, No. 1 CA-CV 08-0413, 2009 WL 1138082, at *4 (Ariz. Ct. App. Apr. 28, 2009) (discussing federal law). But it also applies when an affidavit submitted in opposition to a motion for summary judgment conflicts with the affiant's prior sworn

---

[8] Plaintiffs asserted in the Reply that the affidavit does not create a genuine dispute of material fact precluding summary judgment because the affidavit "cannot refute the admissions of [Defendant] in his plea [agreement]" and cited *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F.Supp.2d 821, 830-31 (D. Colo. 2007), for the proposition that "[c]ourts cannot consider affidavits that are 'contradicted by . . . the affiant's previous deposition testimony' for purposes of determining genuine questions of material fact precluding summary judgment." Docket No. 16, pg. 5. The Court construed Plaintiffs' argument as invoking the sham affidavit rule. Because this argument was raised for the first time in the Reply, the Court *sua sponte* issued an order on December 12, 2019 permitting Defendant to file an optional surreply by January 10, 2020 to address whether the sham affidavit rule applies here. Docket No. 18; *see Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("[W]hen a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond."); NM LBR 7007-2 ("Surreplies require leave of the Court."). Defendant did not file a surreply.

statement signed under penalty of perjury, such as a plea agreement,[9] prior affidavit,[10] or declaration signed under penalty of perjury.[11]

In determining whether an affidavit presents a genuine dispute of material fact, courts consider the circumstances surrounding the prior and new statements.[12] *Ralston*, 275 F.3d at 973. Circumstances considered include whether "(1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* (quoting *Rios v. Bigler,* 67 F.3d 1543, 1551 (10th Cir.1995)). For example, in *Ralston*, the Tenth Circuit Court of Appeals held that the district court properly disregarded two affidavits where the affiant "was cross-examined during

---

[9] *See Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (stating that "just as an affidavit in which a witness tries to retract admissions that he made earlier in his deposition is normally given no weight in a summary judgment proceeding, . . . so a witness should not be permitted by a subsequent affidavit to retract admissions in a plea agreement"); *Madaio v. Fed. Bureau of Investigation*, No. CV-06-BE-00904-S-KOB, 2008 WL 11392887, at *5 (N.D. Ala. Mar. 31, 2008). ("[The defendant] and his attorney are traveling under the assumption that [the defendant] may file an affidavit . . . to defeat summary judgment against him even if the affidavit testimony contradicts his plea and sworn testimony in the underlying criminal case. That assumption is mistaken and this court will not countenance the filing of a sham affidavit." The court also noted that the defendant provided no valid explanation for the contradiction) aff'd sub nom *Madaio v. Roden*, 375 F. App'x 921 (11th Cir. 2010), and aff'd sub nom. *Madaio v. Roden*, 375 F. App'x 921 (11th Cir. 2010).

[10] *See, e.g., UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1473 (9th Cir. 1994) (stating that the inconsistency between a declaration and an earlier sworn statement in a business license did not create "genuine issues of material fact"); *Chestnut v. Fox*, No. CIV-16-1352-R, 2017 WL 713907, at *1 (W.D. Okla. Feb. 23, 2017) (disregarding an affidavit where it contradicted the petitioner's prior assertions in his petition, which he signed under penalty of perjury); *Woods v. Thomas*, No. CIV. A. 94-4502, 1995 WL 295321, at *3 (E.D. Pa. May 11, 1995) (stating that an affidavit was a "sham affidavit" where it conflicted with a prior declaration made under penalty of perjury) aff'd, 74 F.3d 1229 (3d Cir. 1995). As one court observed, "the principles governing the sham affidavit rule conceivably apply to [situations not involving prior depositions]." *656 Logan St. Condo. Ass'n, Inc. v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 951 (D. Colo. 2019) (Hartz, J. concurring part and dissenting in part) (citing *Genberg v. Porter*, 882 F.3d 1249, 1263–64 (10th Cir. 2018)).

[11] *See* 28 U.S.C. § 1746 (permitting a statement made under penalty of perjury to substitute for a sworn declaration, oath, or affidavit).

[12] Because it was not argued, the Court will not address the judicial estoppel effect of factual admissions in a plea agreement when a party to the plea agreement contradicts those facts in an affidavit filed in support of or opposition to a motion for summary judgment.

his . . . deposition; . . . had access to the pertinent evidence at the time of his deposition; and . . . there was nothing in the earlier deposition testimony reflecting any level of confusion or uncertainty concerning [deposition] testimony requiring clarification or explanation." *Id.*[13] On the other hand, the circumstances may reveal legitimate reasons for the contradiction. *E.g.*, *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) (stating that the sham affidavit rule should not be applied where the affiant was simply confused during the prior deposition testimony); *Gose v. Bd. of Cty. Comm'rs of Cty. of McKinley*, 778 F. Supp. 2d 1191, 1196 (D.N.M. 2011) (holding that a contrary affidavit would not be disregarded where the affiant adequately explained that she was confused during her deposition and she was unaware of certain facts at the time); *Covert v. ITT Educ. Servs., Inc.*, 2011 WL 5079591, at *9 (D. Idaho Oct. 25, 2011) (holding that a contradictory affidavit would not be disregarded as a sham where the affiant explained that he lied in the prior declaration to "save his job").

If the affiant fails to provide any explanation for contradictions between the affiant's prior testimony and his affidavit, it is appropriate for the court to disregard the subsequent contradictory affidavit testimony as a sham. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) ("When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a 'sham[.]'"); *Neblett v. Bros.*, 325 F. Supp. 3d 797, 808-09 (E.D. Ky. 2018) ("The rule . . . is that a party opposing summary judgment with an affidavit that contradicts her earlier deposition must explain why she disagrees with herself.") (quoting *Powell-*

---

[13] *See also See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1224 n. 2 (10th Cir. 2000) ("[A]n affidavit that contradicts earlier sworn testimony should only be disregarded if it 'constitutes an attempt to create a sham fact issue.'" Relevant to that determination is whether the affidavit is based on evidence that was unavailable to the affiant at time of the prior deposition or whether the affiant is attempting to clarify confusing testimony).

*Pickett v. AK Steel Corp.*, 549 F. App'x 347, 352 (6th Cir. 2013)). Here, Defendant fails to give

any explanation for the differences between his admissions in the Plea Agreement and his affidavit

submitted in opposition to the motion for summary judgment. The Court will therefore disregard

the affidavit to the extent it contradicts Defendant's admissions in the Plea Agreement.

### 3. The Federal District Court's Findings of Fact Have no Preclusive Effect under the Doctrine of Issue Preclusion

Plaintiffs also argue that principles of issue preclusion[14] "bar[] the re-litigation in the

present proceeding of the factual issues and findings made" in the District Court Action and that

those findings conclusively establish that Defendant acted willfully and maliciously to cause injury

to Plaintiffs. Summary Judgment Motion, pg. 16-18. Citing New Mexico law, Defendant counters

that the court's findings in the District Court Action have no issue preclusive effect because they

were entered by default after Defendant failed to appear or participate in the damages trial.

Response, pg. 5. In reply, Plaintiffs contend that re-litigation of the facts found by the court in the

District Court Action is barred because Defendant "engaged in obstructive conduct resulting in

[the] default judgment." Reply, pg. 3.

Whereas "[c]laim preclusion bars a party from relitigating a claim or cause of action on

which final judgment has been rendered[,] . . . issue preclusion bars a party from relitigating an

issue once it has suffered an adverse determination on the issue, even if the issue arises when the

party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't

of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004). "Federal principles of [issue preclusion] apply to

---

[14] The parties use the term "collateral estoppel" in their briefs. To avoid confusion, this Court will refer to that doctrine as "issue preclusion." *See Martin v. Hauck* (*In re Hauck*), 466 B.R. 151, 161 (Bankr. D. Colo. 2012) (discussing terminology), *aff'd*, 489 B.R. 208 (D. Colo. 2013), *aff'd*, 541 F. App'x 898 (10th Cir. 2013).

prior judgments that are rendered by a federal court." *McCart v. Jordana* (*In re Jordana*)[15], 232 B.R. 469, 475 (10th Cir. BAP 1999), *aff'd* 216 F.3d 1087 (10th Cir. 2000); *see Grogan v. Garner*, 498 U.S. 279, 285 (1991) ("[Issue preclusion] principles . . . apply in discharge exception proceedings pursuant to § 523(a)."). Under federal law, relitigation of an issue is barred if "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Jordana*, at 475-76 (quoting *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.1995)).

Generally, "default judgments entered by federal courts are not given [issue preclusive] effect . . . because issues of fact and law were not 'actually litigated' to a final adjudication on the merits." *Melnor, Inc. v. Corey* (*In re Corey*), 394 B.R. 519, 526 (10th Cir. BAP 2008), *aff'd*, 583 F.3d 1249 (10th Cir. 2009). However, as Plaintiffs recognize, "there is an exception where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment." *Id.* at 528 (quoting *McCart v. Jordana* (*In re Jordana*)*, 216 F.3d 1087 (10th Cir. 2000) (unpublished)). For example, in *Corey*, the Tenth Circuit Bankruptcy Appellate Panel affirmed the bankruptcy court's decision that a default judgment against the debtor carried preclusive effect where the default was entered as a sanction for the debtor's "obstruct[ion of] the course of discovery by preventing the court from setting and completing essential hearings[,] . . . attempt[] to excuse his behavior by incredibly asserting that he has not received the court's notices[,]" and failing to appear for a jury trial on damages without notice. *Id.* at 529.

---

[15] Although other holdings of *Jordana* were superseded by statute, *see In re Tapia*, 598 B.R. 1, 7 (Bankr. D.N.M. 2019), *Jordana* is still good law for the proposition for which it is cited.

Plaintiffs assert that Defendant's behavior falls within the obstruction exception applied in *Corey*.[16] Reply, pg. 3. Unlike in that case, however, there is no indication in the record that the federal district court entered default judgment against Defendant as a sanction for obstructive conduct. *Compare Corey*, 394 B.R. at 529 (stating that the federal district court "explicitly found that '[the debtor] ha[d] obstructed the course of discovery'") *with* Docket No. 15-1, pg. 4 (District Court Action–Order Granting Motion for Default Judgment); Docket No. 1-2 (District Court Action—Final Judgment on Damages); Docket No. 1-1. Instead, the federal district court found that "[Defendant] ha[d] not appeared or otherwise answered this lawsuit in any way." Docket No. 1-1, pg. 1. This fact renders *Corey* inapposite. *Corey* and similar cases distinguish between default judgments entered as a sanction and default judgments entered for "fail[ure] to plead or otherwise defend" against a complaint under Federal Rule of Civil Procedure 55. *See, e.g.*, *Corey*, 394 B.R. at 529 ("Declaring a litigant in default due to an unexcused non-appearance at trial at which a jury has been assembled [like in that case] is not equivalent to a Rule 55 default for failure to answer and defend."); *Jordana*, 232 B.R. at 476 (distinguishing between "default judgment" based on the debtor's "policy of obfuscation to frustrate the judicial process" and "the traditional 'default' situation where a judgment is entered against a defendant who has been served but has failed to appear or plead" and noting that the latter type of default judgment "is always subject to collateral attack on a number of grounds"). Indeed, if failing to plead or otherwise defend gave the findings of fact in a default judgment issue preclusive effect, the exception would swallow the rule.

---

[16] This argument and documents in support thereof were introduced in Plaintiffs' Reply. Defendant has not sought leave to file a surreply. *See Beaird*, 145 F.3d at 1164 (holding that a surreply should be permitted where a new argument is advanced in a reply brief). In any case, no surreply is necessary because the Court rejects Plaintiffs' argument. *Cf. id.* ("[I]f the district court grants summary judgment for the movant without relying on the new materials and arguments in the movant's reply brief, it does not abuse its discretion by precluding a surreply.").

The Court concludes that the general rule that default judgments do not have an issue preclusive effect applies here and that, therefore, the federal district court's findings of fact in the District Court Action do not bar litigation of those facts in this proceeding. Hence, the Court will assess whether the affidavits, testimony, and other evidence adduced by Plaintiffs establish that there is no genuine dispute of material fact requiring trial. *See Anderson*, 477 U.S. at 256.

### B. Claims of Non-Dischargeability

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Non-dischargeability under this section requires proof of both the "willful" and "malicious" elements of the statute. *See Panalis v. Moore* (*In re Moore*), 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of both [willful and malicious elements under 523(a)(6)], an objection to discharge under that section must fail."); *Mitsubishi Motors Credit of America, Inc. v. Longley* (*In re Longley*), 235 B.R. 651, 655 (10th Cir. BAP 1999) ("In the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements—that the injury was both 'willful' and 'malicious.'"); *Shirley v. Lopez* (*In re Lopez*), 566 B.R. 255, 260 (Bankr. D.N.M. 2017) ("Section 523(a)(6) requires proof of both a 'willful act' and 'malicious injury.'") (citing *Moore*, 357 F.3d at 1129).

The "willful" component of § 523(a)(6) requires intent to injure. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). As the Supreme Court explained, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that non-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id*. A deliberate or intentional injury requires that the actor desired or intended that the resulting consequences of the act occur, not simply that the actor intentionally engaged in the act itself. *Id.* at 61-62 (stating that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the

consequences of an act,' not simply 'the act itself.'" (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)). In the absence of direct evidence of a deliberate or intentional injury, a court may infer that the debtor intended the consequent injury from a showing that the debtor undertook the act with the belief that the consequences of the act were substantially certain to occur. *See In re Jensen*, BAP No. CO-18-089, 2019 WL 2403105, at *11 (10th Cir. BAP June 7, 2019) ("[A] creditor must prove facts that support a reasonable inference that a debtor deliberately or intentionally caused injury to the creditor."); *Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach)*, 500 B.R. 22, 35–36 (Bankr. D. Kan. 2013) (Willful injury under § 523(a)(6) may be established by "direct evidence of specific intent to harm" or "indirectly by evidence of . . . the debtor's knowledge that the conduct will cause particularized injury.") (quoting *Mitsubishi Motors Credit of Amer. v. Longley (In re Longley),* 235 B.R. 651, 657 (10th Cir. BAP1999)). The Court measures intent under the "willful" component using a subjective standard. *Burris v. Burris* (*In re Burris*), 598 B.R. 315, 334-35 (Bankr. W.D. Okla. 2019); *Utah Behavior Servs., Inc. v. Bringhurst* (*In re Bringhurst*), 569 B.R. 814, 823 (Bankr. D. Utah 2017).

The "malicious" component of § 523(a)(6) requires that the Court examine the debtor's motives and any claimed justification or excuse for taking the action while desiring, knowing or intending that the action will cause the resulting harm. *See Door, Bentley & Pecha, CPA's, P.C. v. Pasek* (*In re Pasek*), 983 F.2d 1524, 1527 (10th Cir. 1993) ("[T]he debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present."). *See also Schupbach*, 500 B.R. at 36 (discussing the "malice" element and quoting *Pasek*). The "malicious" component of § 523(a)(6) requires conduct more culpable than recklessness. *Sailor Music v. Walker* (*In re Walker*), 514 B.R. 585, 589 (8th Cir. BAP 2014) ("Malice requires more than just reckless behavior by the debtor."); *MarPad,*

*L.L.C. v. Seevers (In re Seevers)*, 574 B.R. 832, 859 (Bankr. D. Neb. 2017) (same); *D'Angelo v. McKean (In re McKean)*, AP 12-6018, 2014 WL 184983, at *5 (Bankr. D. Kan. Jan. 15, 2014) ("Malicious conduct is more culpable than recklessness."); *Deluxe Motor Co. Inc. v. Hardman (In re Hardman)*, AP 10-2015, 2011 WL 5153868, at *4 (Bankr. D. Wyo. Oct. 28, 2011) ("Negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious.").

### 1. Griego is Entitled to Summary Judgment

The Court concludes that Griego is entitled to summary judgment that his judgment against Defendant is non-dischargeable.[17] Defendant admitted intentionally slamming Griego's face into the hood of his USFS vehicle twice, knowing that it was wrong. Defendant admitted that he violated Griego's Constitutional rights to be free from unreasonable searches and seizures by using unreasonable force while detaining Griego. As discussed above, Defendant failed to adduce evidence showing a genuine dispute over these facts that would require a trial. Defendant's admissions establish that Defendant acted intentionally, rather than recklessly. Moreover, Defendant's admission that he knew his actions were wrong shows he intended to cause injury to Griego. Defendant's admissions establish that Defendant's conduct toward Griego falls within the "willful" standard under § 523(a)(6).[18]

---

[17] Griego asks the Court to grant summary judgment declaring the debt to him established by the Griego/Haukereid Judgment is excepted from the discharge. Defendant has not contested the validity of the Griego/Haukereid Judgment; he has contested only whether the debt is nondischargeable. Claim preclusion, if its elements are satisfied, bars relitigation of the existence, amount, and validity of the debt in a non-dischargeability action where the debt has been reduced to judgment in a non-bankruptcy forum. *In re Arthur*, 2019 WL 4915478, at *3 (Bankr. D. Md. Sept. 30, 2019); *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 899 (Bankr. D.N.M. 2016) (Jacobvitz, J.). The Griego/Haukereid Judgment is entitled to claim preclusive effect to establish the debt if three elements are satisfied: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999). A default judgment may be given claim preclusive effect. *Corey*, 394 B.R. at 526. The facts not in genuine dispute show all claim preclusion elements are satisfied with respect to Griego's claim on the debt. Therefore, Defendant may not relitigate the validity or amount of his debt to Griego determined by the Griego/Haukereid Judgment.

[18] A person acts "willfully" under 18 U.S.C. § 242 when "they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." *Screws v. United*

Defendant's admissions also show that his conduct toward Griego falls within the "malicious" standard under § 523(a)(6). Defendant admitted using unreasonable force in carrying out his law enforcement duties by "slamming" Griego's face into the hood of his USFS vehicle twice, knowing that it was wrong, while Griego was handcuffed, compliant, and posed no threat. Defendant so acted without justification or excuse and engaged in behavior that was more than just reckless. Griego adduced no evidence showing these facts are in genuine dispute.

## 2. Haukereid is Not Entitled to Summary Judgment

As to Haukereid, however, Defendant has demonstrated genuine disputes of fact that preclude summary judgment. Plaintiffs assert that, after Defendant saw that Haukereid was filming on his cell phone, Defendant "slapped the phone out of [Haukereid's] hand," pointed a Taser at Haukereid, and told Haukereid to get on the ground. Summary Judgment Motion SUF ¶¶ 15-16. Haukereid testified at the bench trial on damages that he was "backing away" from Defendant and asking why Defendant wanted his identification. Haukereid Testimony, Docket No. 9-3, 4:19-25, 5:13-25. Haukereid also testified that Defendant instructed the dog to attack him and that the dog was within a few feet of his face. Summary Judgment Motion SUF ¶ 17; Haukereid Testimony, Docket No. 9-3, 21:11-22. After Haukereid got on the ground he was handcuffed and put into Officer Olsen's vehicle. Summary Judgment Motion SUF ¶ 20; Def's Aff. ¶¶ 14-15. Haukereid asserts that he was detained in the vehicle for "about two hours" and that after he apologized to Defendant, Defendant told him to "go fuck himself." Haukereid Testimony, Docket No. 9-3, 27:8–28:1; Summary Judgment Motion SUF ¶ 21. Griego testified that Defendant threatened him and Haukereid, saying "If I ever see you guys on my fucking mountain, I'm going to arrest you."

---

*States*, 325 U.S. 91, 105 (1945). Because this definition of "willful" differs somewhat from the definition under § 523, the Court does not rely on the Defendant's admission in the Plea Agreement that he acted willfully to deprive Griego of his Constitutional rights.

Griego Testimony, Docket No. 9-3, 83:19-24. Plaintiffs maintain that these facts establish that Defendant's conduct was "intentional, wrongful, and done without excuse." Summary Judgment Motion, pg. 18.

However, Defendant's affidavit describes his encounter with Haukereid differently:

8. A[] male I later learned was named Elijah Haukereid stood up and began filming with his phone. I instructed him to sit down; instead he approached me. Officer Olsen prevented him from approaching me any closer.

. . .

13. I did not use any expletives during the encounter other than [a single time while detaining Griego].

14. I asked for . . . Haukereid's identification. He said "no"; I asked for identification again and he said "no" again. I reached for his arm to place him in custody. He pulled away, his phone fell to the ground and he started to run. Officer Olsen and I pursued him. He stopped by a tree near a large patch of prickly pear cactus; I deployed my canine. I instructed the canine to lie next to me and instructed . . . Haukereid to get on the ground or he would be bitten. I gave the command to . . . Haukereid a second time, and this time he complied. I placed him in handcuffs at that time.

15. Officer Olsen helped . . . Haukereid up, patted him down and placed him in Officer Olsen's vehicle. I did not deal with . . . Haukereid after that.

Def's Aff.

In the § 523 context, "all the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind vis-a-vis the actual injury caused the creditor." *Pasek*, 983 F.2d at 1527; *see Lopez*, 566 B.R. at 260 ("Evidence of the debtor's state of mind may be inferred from the surrounding circumstances."). The Court finds that Defendant's affidavit creates a genuine dispute over facts that bear directly on Defendant's motives and whether Defendant's actions were justified considering Defendant's law enforcement duties, the circumstances at the site, and Haukereid's behavior.

It is undisputed, for summary judgment purposes, that Defendant had been dispatched to the campsite based on reports that people had entered a prohibited area and started a fire and that there were eight people at the campsite. Summary Judgment Motion SUF ¶ 1; Response, pg. 2; Def's Aff. ¶ 4. *But see* Reply, pg. 4 (stating that these facts are disputed but not adducing any contrary evidence). However, there are disputes over 1) whether Defendant "slapped" Haukereid's phone out of his hand; 2) whether Haukereid was merely backing away from Defendant or running away from him; 3) whether Haukereid refused to provide identification or questioned the need for it; 4) whether Defendant told Haukereid to "go fuck himself" or threatened him; and 5) whether Defendant directed his dog to attack Haukereid or to lie by Defendant's side. Summary Judgment Motion SUF ¶ 21; Haukereid Testimony, Docket No. 9-3, 4:19-25; 5:13-25; 27:23-28:1; Def's Aff. ¶ 14; Griego Testimony, Docket No. 9-3, 83:19-24. Haukereid admits in his testimony that other people in his group were telling him to get on the ground as Defendant requested, which suggests that Haukereid was not compliant on Defendant's first request to get on the ground. Haukereid Testimony, Docket No. 9-3, 22:8-12.

Viewing the facts "and reasonable inferences therefrom in the light most favorable to" Defendant and considering the totality of the circumstances, *Wolf*, 50 F.3d at 796, a fact finder could reasonably find that Defendant did not intend to cause injury to Haukereid and/or that Defendant's actions were justified. *Cf. Graham v. Connor*, 490 U.S. 386, 396 (1989) (stating that the reasonableness of an officer's use of force depends on, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" and stating, "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Hence, summary judgment as to

Haukereid will be denied. *See Anderson*, 477 U.S. at 250 (stating that summary judgment is not proper where there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party"); *cf. Tso v. Nevarez* (*In re Nevarez*), 415 B.R. 540, 544 (Bankr. D.N.M. 2009) (stating that "non-dischargeability actions under 11 U.S.C. § 523(a)(6) may be susceptible to summary judgment when the facts and circumstances surrounding a debtor's actions leave no room for a trier of fact to conclude that the debtor wil[l]fully and maliciously harmed the plaintiff").

## IV. Conclusion

For the foregoing reasons, the Court concludes that the undisputed facts establish that Defendant acted willfully and maliciously toward Griego within the meaning of § 523(a)(6) and, therefore, the portion of the Griego/Haukereid Judgment related to that conduct is not dischargeable under § 523(a)(6). Summary judgment on this claim will be granted as to Griego. However, there are genuine disputes of fact surrounding whether Defendant acted willfully and maliciously toward Haukereid, and summary judgment on Haukereid's non-dischargeability claim will be denied. The Court will issue a separate order to this effect.

Robert H. Jacobvitz
United States Bankruptcy Judge

Date entered on docket: January 24, 2020

COPY TO:

Michael K. Daniels
Attorney for Defendant
PO Box 1640
Albuquerque, NM 87103-1640

Louren Oliveros
Attorney for Plaintiffs
Gorence & Oliveros, P.C.
300 Central Avenue SW
Suite 1000E
Albuquerque, NM 87102